Donald A. MacKay, CalBar # 138540
Attorney at Law
don@damackay.com
77711 Flora Road, Suite 362
Palm Desert, CA 92211
Telephone 202-642-4646
Facsimile  866-833-5180

Attorney for Plaintiff John Meggs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MEGGS, Individually,<br><br>Plaintiff,<br><br>vs.<br><br>SVAP III PLAZA MEXICO, LLC, a Delaware limited liability company,<br><br>Defendant. | **Case No. 2:23-cv-3745**<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, JOHN MEGGS, Individually, on his behalf, and on behalf of all other mobility-impaired individuals similarly situated, (sometimes referred to as "Plaintiff"), hereby sues the Defendant SVAP III PLAZA MEXICO, LLC, a Delaware limited liability company, for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C.§ 12181 et seq. ("ADA") and the related California Statutes, alleging the following:

## COUNT I

## VIOLATION OF TITLE III OF THE

## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181, et seq.

1.      Plaintiff, John Meggs, is an individual residing at 1128 Maynard Drive, Duarte, CA 91010-2455, in the County of Los Angeles.

2.      Defendant's property, commonly referred to as Plaza Mexico, is located at 3100 East Imperial Highway, Lynwood, California 90262, in the County of Los Angeles (the Property).  The Property consists of numerous shops and restaurants, many of which bear

different individual numbers along Imperial Highway and Long Beach Boulevard.

3.    Venue is properly located in the Central District of California, as venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

4.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  See also 28 U.S.C. § 2201 and § 2202.  Jurisdiction over the state law claims vests with this Court because pending and supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.

5.    Plaintiff, John Meggs, is a California resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA, being a paraplegic.  Mr. Meggs, at all times, relies on a manual wheelchair for mobility.  Mr. Meggs has visited the Property on numerous occasions, the last such visit occurred on or about August 30, 2022. During said visit Mr. Meggs was a patron at Star Buffet and Real de Oaxaca; he plans to return to the Property to avail himself of the goods and services offered to the public once the facility is made accessible for his use.  Mr. Meggs has encountered architectural barriers at the Property which have endangered his safety.  Additionally, he has been deterred from additional attempts at patronage because of his knowledge of the barriers.

6.    Defendant owns, leases (or leases to), and/or operates, a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.  Thus, the Defendant is responsible for complying with the obligations of the ADA.  As stated above, the Defendant's place of public accommodation is known as Plaza Mexico, located at 3100 East Imperial Highway, Lynwood, California 90262, in the County of Los Angeles.

7.    Mr. Meggs has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described in, but not necessarily limited to, the allegations contained in paragraph 9 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be

subjected to discrimination by the Defendant; in violation of the ADA. Mr. Meggs desires to visit Plaza Mexico not only to avail himself of the goods and services available at the Property but to assure himself that the Property is in compliance with the ADA - so that he and others similarly situated will have full and equal enjoyment of the Property without fear of discrimination and/or injury.

8.      The Property is located within a thirty-mile drive of Mr. Meggs' home.

## FACTUAL ALLEGATIONS

9.      The Defendant has discriminated against the individual Plaintiff by denying Plaintiff access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

10.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). A preliminary inspection, conducted by Plaintiff's expert, of Plaza Mexico has shown that violations exist and, further, that their remediation thereof is readily achievable in nature. The violations personally encountered or observed by Mr. Meggs include, but are not limited to:

### Parking and Exterior Accessible Route

    A.      The parking spaces near Star Buffet are designated as "accessible" but lack clear and level access aisles, contain sloping and/or cross-sloping of greater than the allowable limit of >2% (sloping nears 10%); in violation of the 1991 Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG") Sections 4.6, as well as Section 502 of the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice (hereinafter "ADA Standards"). These violations create hazardous conditions for Mr. Meggs (as they could cause a tip and fall from his chair) and have prevented him from freely unloading/loading into his vehicle. He

has been forced to park away from the facility, in a flatter area, in order to access the Property. The remediation of these barriers is both technically feasible and readily achievable.

B. Parking spaces in multiple other locations throughout the Property designated as "accessible" lack clear and level access aisles, contain sloping/cross-sloping greater than the allowable limit of 2% (nearing 6%); in violation of ADAAG Sections 4.6 as well as Section 502 of the ADA Standards. As in the preceding, these hazardous conditions have prevented Mr. Meggs from parking his vehicle in the designated accessible space – he forced to park away from the facility in a flat area and then traverse the traffic area of the parking lot in order to access the facility. The remediation of these barriers is both technically feasible and readily achievable.

C. Proper identification signage for the accessible parking areas is non-existent or improperly located; in violation of ADAAG Section 4.6 and Section 502 of the ADA Standards. Due to the lack of proper signage Mr. Meggs had to be extremely diligent in order to locate the accessible parking areas. The remediation of these barriers is both technically feasible and readily achievable.

D. Ramps/curb ramps in the accessible parking areas protrude into the parking spaces or access aisles. These protrusions create slopes of greater than 6% within the accessible parking areas; in violation of ADAAG Section 4.8 and Section 406.5 of the ADA Standards. Mr. Meggs could not safely unload from an automobile due to the dangerous slopes – as in the above, he has been forced to park away from the facility where it is safe to unload/load into his vehicle. The remediation of these barriers is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

E. The accessible routes which traverse the Property contain cross-slopes which

exceed the allowable limit of 2% (greater than 5%), in violation of ADAAG Section 4.3 and Sections 402 and 403 of the ADA Standards. While traveling upon these sidewalks and paths of travel Mr. Meggs has been endangered by excessive cross-sloping which could cause a tip and fall from wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

F.    The accessible routes which traverse the Property contain gaps in the path of travel and abrupt changes of greater than the allowable limits; in violation of ADAAG Section 4.3 and Sections 402 and 403 of the ADA Standards. These abrupt changes of level and gaps in the path of travel have presented Mr. Meggs with danger – they could not only damage his wheelchair but also cause him to tip and fall. The remediation of these barriers is both technically feasible and readily achievable.

G.    The curb ramps at the Property contain sloping in excess of the allowable limit of 8.33% (above 11%); in violation of the ADAAG and Section 406 of the ADA Standards. These curb ramps have endangered Mr. Meggs by presenting him with a tipping hazard which could damage his wheelchair and/or cause a tip and fall. The remediation of these barriers is both technically feasible and readily achievable.

H.    The ramps along the exterior accessible route at Property are greater than six feet in length and lack the required handrails or extensions; in violation of ADAAG Section 4.8 and Section 405.8 of the ADA Standards. Those in wheelchairs require handrails for assistance when a ramp is quite lengthy; thus Mr. Meggs has been forced to traverse the exterior accessible route at the Property under dangerous conditions – without handrails Mr. Meggs could roll away, tip, and fall. The remediation of these barriers is both technically feasible and readily achievable.

**Access to Goods and Services**

I.   Plaza Mexico fails to make reasonable accommodations in policies, practices and procedures to provide full and equal enjoyment of disabled individuals and does not maintain the elements required to be accessible and usable by persons with disabilities, thus violating Section 36.211 of the ADAAG and the ADA Standards. Mr. Meggs has not been afforded equal access to all facilities/amenities available to patrons at the Property.

J.   The counter heights within tenant spaces throughout the Property, including those within Real de Oaxaca, are mounted at a height greater than the allowable limit of 36 inches; in violation of ADAAG Section 7.2 (1) and the ADA Standards. Due to their height Mr. Meggs could not make use of counters or writing/work surfaces throughout the Property (equal facilitation was not provided). The remediation of these barriers is both technically feasible and readily achievable.

K.   The interior paths of travel within tenant spaces throughout the Property fail to provide minimum clear width space for those in wheelchairs; in violation of ADAAG Section 4.3 and the ADA Standards. Due to these conditions Mr. Meggs was unable to freely access tenant spaces. The remediation of these barriers is both technically feasible and readily achievable.

L.   Facility at the property, Real de Oaxaca, serves food or drink with 0% (5% minimum required) of seating spaces at tables and counters being accessible; in violation of the ADAAG and Section 226 of the ADA Standards. Due to the lack of accessible seating Mr. Meggs could not dine in a comfortable manner. The remediation of these barriers is both technically feasible and readily achievable.

**Access to Men's Restrooms at Real de Oaxaca**

M.   Mr. Meggs cannot access the restroom as it lacks accessible door hardware in violation of ADAAG Section 4.13.9 and the ADA Standards. Levered door handles are required; the remediation of this barrier is readily

achievable.

N.  Restroom lavatories lack pipe insulation as required by the ADAAG and Section 606 of the ADA Standards; the lack of insulation has created the danger of Mr. Meggs burning his leg on the pipes. The remediation of this barrier is both technically feasible and readily achievable.

O.  Sinks within restroom are mounted above the allowable limits to rims, preventing access by Mr. Meggs; in violation of ADAAG Section 4.24 and Section 606 of the ADA Standards. Similar improper sink heights create inaccessibility at various other tenant locations. The remediation of this barrier is both technically feasible and readily achievable.

P.  Mr. Meggs unable to use the mirror due to its improper mounting height; in violation of the ADAAG and the ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

Q.  Mr. Meggs could not safely transfer to the water closet due to a lack of clear floor space in violation of the ADAAG and Section 604 of the ADA Standards. Mr. Meggs, and other wheelchair users, requires the proper amount of clearance in order to be able to safely transfer from his wheelchair to the water closet. The remediation of this barrier is both technically feasible and readily achievable.

R.  Mr. Meggs is unable to reach the towel dispenser control which is mounted improperly above the allowable limit of 48"; in violation of the ADAAG and Section 308 of the ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

S.  Mr. Meggs was unable to makes use of toilet tissue dispensers as they are mounted less than 12" above the grab bars; in violation of the ADAAG and the ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

T.  Mr. Meggs could not access the coat hooks and/shelves within the restrooms

due to their improper height; a violation of the ADAAG and the ADA Standards. Storage areas are similarly inaccessible at various other tenant locations at the Property. The remediation of these barriers is both technically feasible and readily achievable.

**Access to Men's Restrooms at Star Buffet**

U.  Mr. Meggs was impeded entering and exiting the restroom due inadequate maneuvering space of 12 inches in violation of the ADA Standards Section 404. The remediation of this barrier is both technically feasible and readily achievable.

V.  Mr. Meggs could not make use of the coat hooks or the towel and seat cover dispensers. All were mounted beyond the prescribed reach ranges in Section 4.2 of the ADAAG and Section 308 of the ADA Standards. Reaching beyond his capacity could cause Mr. Meggs to fall from his wheelchair. The remediation of this barrier is both technically feasible and readily achievable.

W.  Stall door is not self-closing and/or lacks proper hardware; violating the ADAAG and Section 604 of the ADA Standards. Without self-closing stall doors Mr. Meggs could not comfortably make use of the stall – as he could not latch the door closed before he used the facilities. The remediation of this barrier is both technically feasible and readily achievable.

X.  The toilet with the restroom contains an improper centerline which is more than 19" from the side wall; (16" to 18"); in violation of the ADAAG and the ADA Standards. Improper centerlines prevent Mr. Meggs from safely transferring from his wheelchair to the toilet; such was the case here. The remediation of this barrier is both technically feasible and readily achievable.

11.  In encountering and dealing with the lack of accessible facilities the Plaintiff experienced difficulty and discomfort. These violations denied the Plaintiff full and equal access to facilities, privileges and accommodations offered by the Defendant.

12.  Additionally, on information and belief, the Plaintiff alleges that the failure to

remove the barriers was intentional because: (1) the particular barriers are intrusive and obvious; (2) the Defendant exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the Defendant intended any other configuration, they had the means and ability to make the change.

13. Given the obvious and blatant violations, the Plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the Plaintiff seeks to have all barriers related to his disability remedied. See Doran v. 7-11, 506 F.3d 1191 (9th Cir. 2007) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

14. All of the foregoing violations are violations of the 1991 Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design (ADA Standards), as promulgated by the U.S. Department of Justice.

15. The discriminatory violations described in paragraph 10 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of, services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-

compliance with the Americans with Disabilities Act.

16.    Defendant has discriminated against the individual Plaintiff by denying Plaintiff access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

17.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.  Furthermore, the public interest would not be disserved by a permanent injunction.  Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

18.    Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to, and useable by, individuals with disabilities as

defined by the ADA.

19.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).  All other conditions precedent have been met by Plaintiff or waived by the Defendant.

20.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter Plaza Mexico to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE**, Plaintiff respectfully requests:

A. The Court issue a Declaratory Judgment that determines that the Defendant, at the commencement of the subject lawsuit, was in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

B. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery - within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendants to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

C. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

D. An Order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

E. Such other relief as the Court deems just and proper and/or is allowable under

Complaint for Damages, Declaratory and
Injunctive Relief                           Page 11 of 15                    Case No. 2:23-cv-3745
                                                                 Meggs v. SVAP III Plaza Mexico, LLC

Title III of the Americans with Disabilities Act.

## COUNT II
## DISABLED PERSONS ACT

20.    Plaintiff realleges herein all prior allegations of the Complaint as if more fully set forth herein.

21.    California Civil Code § 54 states, in part, that:  Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

22.    California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

23.    Both sections specifically incorporate (by reference) an individual's rights under the ADA.  See Civil Code §§ 54(c) and 54.1(a).

24.    Here, Defendant discriminated against the physically disabled public, including the Plaintiff, by denying Plaintiff full and equal access to the facility.  Defendant also violated Mr. Meggs' rights under the ADA, and therefore, infringed upon or violated (or both) Plaintiff's rights under the Disabled Persons Act.

25.    For each offense of the Disabled Persons Act, Plaintiff seeks actual damages (both general and specific damages), declaratory relief, and other remedies available under California Civil Code § 54.3.

26.    Plaintiff Meggs also seeks to recover reasonable attorney's fees incurred under California Civil Code § 54.3.

## COUNT III
## UNRUH CIVIL RIGHTS ACT

27.    Plaintiff realleges herein all prior allegations of the Complaint as if more fully set

forth herein.

28.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or service in all business establishments of every kind whatsoever.

29.    California Civil Code § 51 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

30.    California Civil Code § 51 specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

31.    Defendant's aforementioned acts and omissions denied the physically disabled public, including the Plaintiff, full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

32.    These acts and omissions (including those which violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

33.    Plaintiff Meggs was damaged by Defendant's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

34.    Plaintiff Meggs also seeks to enjoin Defendant from violating the Unruh Act (and ADA), and recover reasonable attorney's fees and costs incurred under California Civil Code § 52(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff John Meggs prays for judgment against the Defendant, jointly and severally, for:

A. Injunctive relief, or any other relief the Court deems proper.

B. Declaratory relief that Defendant violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

C. Statutory minimum damages under either § 52(a) or § 54.3(a) of the California Civil Code, whichever is greater (but not both) according to proof.

D. Attorney's fees, litigation expenses, and cost of suit.

E. Interest at the legal rate from the time of the filing of this action.

Respectfully Submitted,

Donald A. MacKay
Attorney at Law
don@damackay.com

By:

Donald A. MacKay

Attorney for Plaintiff John Meggs

Complaint for Damages, Declaratory and
Injunctive Relief                    Page 14 of 15                    Case No. 2:23-cv-3745
                                                      Meggs v. SVAP III Plaza Mexico, LLC

## **VERIFICATION**

I am a party to this action, and I have read the foregoing complaint and know its contents.  The matters stated in the complaint are true based on my own knowledge, except to those matters stated on information and belief, and to those matters I believe them to be true.

I declare under penalty and perjury under the laws of the state of California that the foregoing is true and correct.

Executed on May 15, 2023, at Las Vegas, Nevada.

By: _____
                John Meggs